ORDERED.

Dated: September 29, 2017

Caryl E. Delano
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Case No. 9:15-bk-08727-FMD |
| | Chapter 7 |
| William E. Kanewske, | |
|     Debtor. | |
| _____/ | |
| Manuel Rivera, | |
|     Plaintiff, | |
| v. | Adv. Pro. No. 9:16-ap-00094-FMD |
| William E. Kanewske, | |
|     Defendant. | |
| _____/ | |

**MEMORANDUM OPINION ON
(1) PLAINTIFF'S MOTION FOR NEW TRIAL AND (2) PLAINTIFF'S COMPLAINT
TO DETERMINE DISCHARGEABILITY OF DEBT AND OBJECTION TO DISCHARGE**

The aftermath of a relationship breakup is not always pretty. Particularly when, as here, there are serious allegations of fraud. During Plaintiff and Defendant's relationship, Defendant managed their commingled finances. After the parties' breakup, Plaintiff accused Defendant of opening credit card accounts in Plaintiff's name and spending funds in Plaintiff's bank account

without his permission. When Defendant filed this bankruptcy case, Plaintiff timely filed this adversary proceeding.

In his complaint (the "Complaint"),[1] Plaintiff alleges that his claims against Defendant should be excepted from discharge as false pretenses, false representations and fraud under 11 U.S.C. §§ 523(a)(2)(A),[2] for breach of fiduciary duty under § 523(a)(4), and for willful and malicious injury under § 523(a)(6). Plaintiff also objects to Defendant's discharge under § 727(a)(4)(A), alleging that Defendant made false oaths and omissions on his bankruptcy schedules.

The Court conducted trial on the Complaint on March 21, 2017, and took the matter under advisement. On May 4, 2017, shortly before the Court was prepared to rule, Plaintiff filed his Motion for a New Trial.[3] The Motion was heard by the Court on June 29, 2017, and taken under advisement.

Having considered the evidence at trial, the Court finds that Plaintiff has not met the burden of proof needed to establish the non-dischargeability of a debt under § 523 or to bar Defendant's discharge under § 727. Having carefully considered Plaintiff's Motion for New Trial, the Court finds that the proffered new evidence could have been timely obtained prior to trial and that even if the Court were to grant the motion and permit the introduction of the evidence and related testimony, Plaintiff still would not have met his burden of proof. Accordingly, the Court will deny the Motion for New Trial and enter judgment in Defendant's favor.

---

[1] Doc. No. 1.
[2] Unless otherwise stated, all statutory references are to the United States Bankruptcy Code, 11 U.S.C. §101, *et seq.*
[3] Doc. No. 48. Plaintiff previously filed a *Post-Trial/Pre-Judgment Motion to Introduce Newly Discovered Evidence* (Doc. No. 46), but that motion was withdrawn (Doc. No. 49).

## FACTS

The evidence at trial is summarized as follows.

In late 2010, while living in Austin, Texas, Defendant, William Kanewske, and Plaintiff, Manuel Rivera, became romantically involved. Two years later, they relocated to Naples, Florida, and purchased a condominium together (the "Naples Condominium"). While they lived together in Naples, Defendant managed Plaintiff's financial affairs.

### *Bank Account and Credit Cards*

Plaintiff maintained a bank account at JP Morgan Chase (the "Chase Account"). Plaintiff testified that at some point in the parties' relationship, Defendant was added as a signatory to the Chase Account. With Plaintiff's knowledge and consent, Defendant managed the Chase Account using Plaintiff's online login and password for electronic transactions. Defendant also had a debit card for the Chase Account.

At some unspecified time, Defendant and Plaintiff agreed to open a credit card account with Capital One in Plaintiff's name (the "Capital One Account"). After the Capital One Account was opened, Defendant opened several other credit cards in Plaintiff's name including Credit One Visa, Merrick Bank, Capital One Quicksilver, and Barclays Bank (together, the "Credit Card Accounts"). Plaintiff testified that the Credit Card Accounts were opened without his knowledge or consent.

In October 2014, Defendant met with a bankruptcy attorney. In November 2014, Defendant decided that he should remove his name from the Chase Account. Defendant and Plaintiff went to Chase Bank for this purpose and for Defendant to open a new bank account in his own name. During that meeting, a Chase employee deactivated Defendant's Chase Account debit card and changed the online login and password. The Chase employee gave the new log-in and password to Plaintiff.

Plaintiff gave his new Chase Account log-in and password to Defendant. And, with Plaintiff's knowledge and consent, Defendant continued to manage the Chase Account on Plaintiff's behalf, both online and by writing checks. Although Defendant testified that he did not access the Chase Account after November 2014, the Court finds this testimony not to be credible given Plaintiff's conflicting testimony.

The parties ended their relationship in March 2015, but they continued to communicate with each other. And, with Plaintiff's knowledge and consent, Defendant continued to manage the Chase Account and Plaintiff's financial affairs.

In August 2015, Defendant filed this Chapter 7 case. On Schedule H of his bankruptcy schedules,[4] Defendant listed Plaintiff as a codebtor and also listed Plaintiff on the master mailing matrix.[5] On August 30, 2015, the Clerk's Office served Plaintiff with a copy of the Notice of Commencement of Case.[6] On November 9, 2015, Jacqueline Buyze, Esq., filed a notice of appearance on Plaintiff's behalf.[7] In February 2016, Jeffrey Lampley, Esq., timely filed Plaintiff's complaint in this adversary proceeding.[8]

Plaintiff testified at trial that he did not himself attempt to access the Chase Account until September 2015. Plaintiff also testified that he had no knowledge of the Credit Card Accounts until September 2015, when he received an envelope from Defendant containing several credit cards bearing Plaintiff's name. Plaintiff testified that after he learned of the Credit Card Accounts, he obtained his credit report and called the credit card companies to report that the accounts were fraudulent.

---

[4] Main Case, Doc. No. 1, p. 23.
[5] Main Case, Doc. No. 1, p. 44.
[6] Main Case, Doc. No. 5.
[7] Main Case, Doc. No. 13.
[8] Doc. No. 1.

Although Defendant testified at trial that he had not opened any credit card accounts in Plaintiff's name, this testimony is contradicted by his sworn testimony at the meeting of creditors[9] conducted on October 6, 2015, as well as by text messages between Plaintiff and Defendant that were read into evidence.[10]

At the meeting of creditors, Defendant testified that, with Plaintiff's authority, he had opened the Credit Card Accounts in Plaintiff's name, with the exception of the Merrick Bank account. The parties' text messages reflect a conversation between them in which Defendant stated that he thought Plaintiff knew about all of the Credit Card Accounts (including the Merrick Bank account), except for the Barclays Bank account.

The only financial records offered into evidence by Plaintiff were the Chase Account's monthly bank statements (the "Chase Account Statements") for January through August 2015.[11] The Chase Account Statements reflect electronic payments made from the Chase Account to Credit One, Barclaycard, Merrick Bank, and Capital One. Plaintiff testified that he never looked at the Chase Account Statements and that he did not know how much money was in the Chase Account at any given time; he would have to ask Defendant to check the account balance for him.

Plaintiff acknowledged that the debit card ATM withdrawals and purchases shown on the Chase Account Statements were largely made on his behalf. Plaintiff testified that, other than the payments on the Credit Card Accounts reflected on the Chase Account Statements, he had not made any other payments for charges on the Credit Card Accounts. He further testified that after he reported the fraud on the accounts, he was not personally liable for the charges on the Credit Card Accounts.

---

[9] Although not admitted into evidence, Plaintiff's Exhibit 4 was read into the record.
[10] Although not admitted into evidence, Plaintiff's Exhibit 6 was read into the record.
[11] Pl.'s Ex. 3, p. 4.

Plaintiff did not offer statements of the Credit Card Accounts into evidence and provided no evidence as to the charges on those accounts.

*Alleged Failure to List Assets on Defendant's Bankruptcy Schedules*

In his Complaint, Plaintiff alleges that Defendant failed to list a number of assets on his bankruptcy schedules. However, at trial, the evidence was limited to Defendant's alleged failure to list an Apple iPad, a television, a refrigerator, and a stove.[12] Defendant testified that the computer that he listed on his schedules with a value of $100.00 was actually the iPad. He testified that he had not listed the refrigerator and stove as he considered them to be part of the Naples Condominium that was listed on his schedules. Debtor testified that the refrigerator and the stove are over 25 years old; he estimated their value to be between $50.00 to $100.00 dollars. Defendant acknowledged having failed to list his television set that, at the time of filing, was five years old. Defendant testified the television set's value to be $75.00.

*Alleged Misstatements and Omissions on Schedules and Statement of Financial Affairs*

In his Complaint, Plaintiff alleges that Defendant made the following seven misstatements and omissions on his bankruptcy schedules and Statement of Financial Affairs: (1) failure to list the continued use of the Chase Account on Schedule B; (2) failure to list Plaintiff as a creditor; (3) failure to list the "Lending Club" as a creditor; (4) listing two dependents on Schedule D who were not residing with Defendant; (5) listing payments made to Warren Federal Credit Union ("Warren FCU") in the 90 days prior to bankruptcy filing that were paid from the Chase Account rather than Defendant's account; (6) failure to list Defendant's interest in the Chase Account in the year immediately preceding the filing of the case; and (7) failure to include payments made on Defendant's car from the Chase Account on the Statement of Current Monthly Income.

---

[12] Plaintiff did not allege misstatements regarding the stove and refrigerator in his complaint.

6

With respect to Defendant's use of the Chase Account and the payments to Warren FCU, Defendant's testimony was inconsistent. Ultimately, Defendant acknowledged that his own car payments of $422.89 per month were paid to Warren FCU by automatic draft from the Chase Account. Defendant testified that he did not include this amount in his Statement of Current Monthly Income because he had an agreement with Plaintiff as a part of their separation that in exchange for his car payments being made from Plaintiff's Chase Account, he was himself paying Plaintiff's car payment of $350.00 per month to Kinecta Federal Credit Union ("Kinecta FCU"). To support this testimony, Defendant offered his own bank statements that reflected four monthly payments to Kinecta FCU.[13] Defendant further testified that he had given Plaintiff a check for $300.00 to equalize the difference in the car payments and that this was a temporary arrangement until he was able to stop the automatic draft to Warren FCU for his car payments.

Defendant and Plaintiff both testified that Defendant's name was removed from the Chase Account in November 2014. Defendant testified that he did not list the Chase Account on his bankruptcy schedules because he was no longer on the account and, because the Chase Account was not closed, he did not list it as a closed account on his Statement of Financial Affairs. Plaintiff presented no evidence about Defendant's claim of dependents. Defendant testified that his failure to list the Lending Company was inadvertent.

### *Plaintiff's Motion for New Trial*

In the Motion for New Trial and supporting affidavit,[14] Plaintiff states that he discovered new evidence when he met with his attorney and a representative of JP Morgan Chase Bank on March 28, 2017, and obtained the bank records (the "Chase Account Records") that are attached to

---

[13] Def.'s Ex. 1.
[14] Doc. Nos. 48, 54.

the Motion.[15] The Chase Account Records consist of signature cards for the Chase Account and 21 checks (the "Chase Checks").

The signature cards show that the Chase Account was opened as Plaintiff and Defendant's joint account on October 1, 2011. A second signature card, dated November 28, 2014, is signed by Plaintiff and titled "Manuel Rivera [Plaintiff] / POD William E. Kanewske [Defendant]" with the type of ownership designated as "Individual – POD." The Court takes judicial notice that a "POD" bank account is an account that is payable on death to a named beneficiary.

The Chase Checks were written on the Chase Account between January 2015 and August 2015. Plaintiff alleges that Defendant forged his signature on the Chase Checks. The checks are in relatively small amounts, between $50.00 and $375.00 each, and total $2,580.00:

| Date | Payee | Amount |
|---|---|---|
| January 22, 2015 | Kinecta FCU | $350.00 |
| February 1, 2015 | Dan Lamey (Jubilee Fellowship) | $100.00 |
| February 2, 2015 | William Kanewske | $100.00 |
| February 3, 2015 | R R Electrical | $75.00 |
| February 20, 2015 | William Kanewske | $300.00 |
| February 22, 2015 | Dan Lamey (Jubilee Fellowship) | $100.00 |
| March 1, 2015 | Dan Lamey (Jubilee Fellowship) | $100.00 |
| March 8, 2015 | Jubilee Fellowship | $100.00 |
| March 15, 2015 | Jubilee Fellowship (Contribution) | $100.00 |
| March 22, 2015 | Jubilee Fellowship | $50.00 |
| March 29, 2015 | Jubilee Fellowship (Contribution) | $100.00 |
| April 19, 2015 | Jubilee Fellowship (Contribution) | $50.00 |
| April 26, 2015 | Jubilee Fellowship | $100.00 |
| May 1, 2015 | William Kanewske | $50.00 |
| May 3, 2015 | Jubilee Fellowship (Contribution) | $100.00 |
| May 28, 2015 | William Kanewske | $100.00 |
| June 7, 2015 | Jubilee Fellowship | $50.00 |
| June 8, 2015 | William Kanewske | $75.00 |
| June 14, 2015 | Jubilee Fellowship | $50.00 |
| July 31, 2015 | William Kanewske | $375.00 |
| August 7, 2015 | William Kanewske | $155.00 |

---

[15] Doc. No. 48.

The Motion for New Trial alleges that due to Plaintiff's health and concerns regarding identity theft, Plaintiff's prior efforts to obtain bank records were futile and "issuing a subpoena under the circumstances could be construed as a stay violation."[16]

### ANALYSIS

The Court will first address the Motion for New Trial, and then the merits of Plaintiff's claims.

A.  **Motion for New Trial**

Federal Rule of Civil Procedure 59 is made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 9023. Generally, a Rule 59 motion is made following the entry of a judgment. When a motion is made following the entry of judgment, the only grounds for granting such a motion are "newly-discovered evidence or manifest errors of law or fact."[17]

However, if a party seeks to introduce additional evidence while the matter is under advisement with the Court and prior to the entry of a final judgment, the motion is considered as a motion to reopen the evidence.[18] A motion to reopen the evidence is distinguishable from a Rule 59 motion because the moving party is seeking to supplement the record, rather than reconsider, alter, or amend a judgment.[19] Thus, the court need not find that the evidence is newly discovered or

---

[16] Doc. No. 48, p. 3.
[17] *Jones v. Thomas*, 605 F. App'x 813, 814 (11th Cir. 2015) (quoting *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007)).
[18] *In re W. Shore Assocs., Inc.*, 435 B.R. 723, 724–25 (Bankr. M.D. Fla. 2010).
[19] *In Matter of Dunson*, No. 13-10604-WHD, 2014 WL 7793689, at *1 (Bankr. N.D. Ga. Sept. 16, 2014) (quoting 12 Moore's Federal Practice § 59.13(3)(c) (Matthew Bender 3d ed. 2002) ("A Rule 59 motion is distinct from a motion to reopen to take additional testimony. A Rule 59 motion is made only after the entry of a judgment, whereas a motion to reopen is most commonly made . . . while the judge has the case under advisement. . . .")).

would demonstrate a manifest error of law or fact.[20] Instead, the decision to reopen the evidentiary record is within the sound discretion of the court.[21]

The following factors apply to a court's consideration of a motion to reopen a case for additional evidence: (1) the importance and probative value of the evidence sought to be introduced; (2) the moving party's diligence and explanation for failing to previously introduce the evidence or arguments; (3) the undue prejudice that the delay might cause the non-moving party; and (4) whether the court has already announced its decision.[22] The Court will address each factor in turn.

First, the proffered documentary evidence and additional testimony by Plaintiff has little importance or probative value. The additional documentary evidence, the Chase Account Records, is cumulative of evidence admitted at trial. The signature cards are consistent with Plaintiff's testimony at trial that Plaintiff added Defendant as a signatory to the Chase Account and then later removed him from the account. Likewise, the Chase Checks corroborate the testimony at trial; Plaintiff testified that Defendant wrote checks on the Chase Account and Defendant did not deny writing checks on the account. The testimony elicited at trial was that Plaintiff consented and authorized Defendant to use his checking account to handle his financial affairs even after their breakup in March 2015. Most of the Chase Checks were written before March 2015; they include a check to Kinecta FCU for Plaintiff's car payment. And Plaintiff testified that even after the parties' separation, he allowed Defendant to continue managing his financial affairs up until September 2015. The dates of the Chase Checks are consistent with this testimony.

Second, there is a lack of diligence on Plaintiff's behalf in obtaining the Chase Account Records and the explanation for his failure to do so is without merit. This adversary proceeding was

---

[20] *Id.* at *4.
[21] *Id.* at *2 (quoting *Romeo v. Sherry*, 308 F. Supp. 2d 128, 138-39 (E.D. N.Y. 2004)).
[22] *In re W. Shore Assocs., Inc.*, 435 B.R. at 725 (internal citations omitted).

filed in February 2016 and was tried over 13 months later in March 2017. At all times, Plaintiff has been represented by counsel. While Plaintiff alleges that in September of 2015 he suffered medical issues that impaired his ability to subpoena JP Morgan Chase, there is no reason why his attorneys could not have subpoenaed the Chase Account Records.

Plaintiff's statement in the Motion for New Trial that "issuing a subpoena under the circumstances could be construed as a stay violation" is not credible.[23] First, the automatic stay does not preclude discovery in an adversary proceeding pending before the bankruptcy court. Second, the Chase Account Records that Plaintiff now seeks to introduce into evidence are his own records, which he could have obtained at any time. Third, given that this Court finds that the Chase Account Records are not particularly probative in light of the evidence and testimony of trial, granting the Motion for New Trial would prejudice Defendant by delaying this proceeding further. And fourth, although the Court had not announced its decision as of the filing of the Motion for New Trial, because the Court finds the proffered evidence to be neither important nor compelling, this factor does not weigh in favor of granting the Motion.

Having considered the foregoing factors, the Court, in its discretion, will not reopen the evidence. Accordingly, Plaintiff's Motion for New Trial is denied.

### B. Plaintiff's Claims

The Court has carefully considered the evidence and testimony admitted at trial. For the following reasons, the Court finds that Plaintiff has not met his burden of proof on any of his claims and will enter judgment in Defendant's favor.

---

[23] The Court notes that Defendant filed a Motion for Sanctions against Plaintiff and his attorney, Jacqueline Buyze, Esq., in the main case on June 15, 2016 (Main Case, Doc. No. 58) for violation of the automatic stay. Defendant withdrew the Motion for Sanctions on August 22, 2016 (Main Case, Doc. No. 69). The sanctions motion was unrelated to this adversary proceeding.

*Burden of Proof*

A plaintiff seeking to except a debt from discharge under §§ 523(a)(2)(A) and 523(a)(6) must prove all the essential elements of the claim by a preponderance of the evidence.[24] Exceptions to the discharge of a particular debt are strictly construed in favor of the defendant. Likewise, a plaintiff objecting to a defendant's discharge under § 727(a)(4)(A) for an alleged false oath or account must establish by a preponderance of the evidence that the defendant is not entitled to a discharge.[25] Further, the denial of a defendant's discharge is an "extraordinary remedy"[26] and an "extreme penalty"[27] to the defendant. Therefore, any challenge to a defendant's discharge must be construed strictly against the objecting party and liberally in favor of the defendant.[28]

## I.     Fraud Under § 523(a)(2)(A) (Counts I, IV, VII, X, XIII)

Section 523(a)(2)(A) excepts debts from discharge to the extent they were obtained by false pretenses, a false representation, or actual fraud. Plaintiff seeks to except from discharge any claims he may have against Defendant for opening the Credit Card Accounts in Plaintiff's name without his knowledge or consent. To prevail on his claim, Plaintiff must establish that Defendant made a false representation with the intention of deceiving him; Plaintiff actually relied on the misrepresentation; the reliance was justified; and Plaintiff sustained a loss as a result of the false representation.[29]

---

[24] *Grogan v. Garner*, 498 U.S. 279, 287-88 (1991) (holding that the preponderance of the evidence standard applies to all § 523(a) non-dischargeability claims); *In re Pelchat*, No. 11-76869-MGD, 2014 WL 457776, at *2 (Bankr. N.D. Ga. Jan. 7, 2014) (citing *Grogan* in a § 523(a)(2)(A) case); *In re Ragucci*, 433 B.R. 889, 895 (Bankr. M.D. Fla. 2010) (citing *Grogan* in a § 523(a)(6) case).
[25] *In re Khanani*, 374 B.R. 878, 888 (Bankr. M.D. Fla. 2005).
[26] *Dorsey v. DePaola*, No. 2:11-CV-1026-MEF, 2012 WL 1957713, at *11 (M.D. Ala. May 31, 2012).
[27] *In re Nascarella*, 492 B.R. 914, 917 (Bankr. M.D. Fla. 2013).
[28] *Id.*; *see also In re Mitchell*, 633 F.3d 1319, 1327 (11th Cir. 2011).
[29] *In re Bilzerian*, 153 F.3d 1278, 1281 (11th Cir. 1998); *In re Johannessen*, 76 F.3d 347, 350 (11th Cir. 1996).

A creditor cannot establish a claim under § 523(a)(2)(A) without proof of reliance on intentional misstatements made by a debtor. The creditor's reliance upon the debtor's false representation must also be justified. "Justifiable reliance is gauged by an individual standard of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case."[30] Plaintiff concedes that he authorized Defendant to open up the Capital One Account; however, Plaintiff testified that he did not authorize Defendant to open the other Credit Card Accounts.

Even if Plaintiff established that Defendant made false representations to him regarding the Credit Card Accounts, Plaintiff has not met his burden of proof on the remaining elements of § 523(a)(2)(A). Plaintiff's testimony that he did not look at the Chase Account Statements, which reflected payments on the Credit Card Accounts, would have put him on inquiry notice of the existence of the Credit Card Accounts. "[A] person is required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation."[31] In light of the circumstances, Plaintiff's failure to even look at the Chase Account Statements demonstrates that any reliance he placed on Defendant was not justified.

Lastly, having failed to provide any evidence of the outstanding balances on the Credit Card Accounts into evidence, Plaintiff has failed to establish that he suffered any loss.

For these reasons, the Court will enter judgment for Defendant on Plaintiff's § 523(a)(2)(A) claims.

---

[30] *Field v. Mans*, 516 U.S. 59, 71, 116 S. Ct. 437, 444, 133 L. Ed. 2d 351 (1995).
[31] *Field v. Mans*, 516 U.S. at 71.

## II.     *Fraud as a Fiduciary Under § 523(a)(4) (Counts II, V, VIII, XI, XIV)*

Bankruptcy Code § 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity. . . ." Plaintiff alleges that a fiduciary relationship arose between him and Defendant when Defendant undertook the management of Plaintiff's finances and fraudulently used his personal financial information to open up credit cards in Plaintiff's name without his consent.

In order to prevail on a claim under § 523(a)(4), Plaintiff must show that a fiduciary relationship existed and that Defendant engaged in fraud while acting in that fiduciary capacity. The term "fiduciary" as used in § 523(a)(4) does not encompass the traditional application of fiduciary—"a relationship involving confidence, trust, and good faith."[32] Rather, "fiduciary" under § 523(a)(4) is narrowly construed and requires the existence of an express or technical trust.[33] An express or technical trust exists when there is: (1) a segregated trust res; (2) an identifiable beneficiary; and (3) affirmative trust duties established by contract or by statute.[34]

Plaintiff did not plead or establish at trial the existence of an express or technical trust. In fact, Plaintiff failed to establish any type of trust or trust agreement or identifiable trust res. Because there was no fiduciary relationship between Plaintiff and Defendant, the Court need not determine whether there was fraud or defalcation while acting in a fiduciary capacity[35] and will enter judgment in Defendant's favor on Plaintiff's § 523(a)(4) claims.

---

[32] *In re Pupello*, 281 B.R. 763, 767 (Bankr. M.D. Fla. 2002) (quoting *In re Wing*, 96 B.R. 369, 374 (Bankr. M.D. Fla. 1989)).
[33] *Quaif v. Johnson,* 4 F.3d 950, 953 (11th Cir. 1993).
[34] *In re Cuenant*, 339 B.R. 262, 274 (Bankr. M.D. Fla. 2006) (citing *In re Miceli*, 237 B.R. 510, 515 (Bankr. M.D. Fla. 1999)).
[35] *Cf. In re Fernandez-Rocha*, 451 F.3d 813, 817 (11th Cir. 2006).

### *III.    Conversion Under § 523(a)(6) (Counts III, VI, IX, XII, XV, XVI)*

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the Defendant to another entity or to the property of another entity." In his Complaint, Plaintiff alleges that Defendant willfully and maliciously injured him when Defendant used Plaintiff's personal financial information to open up credit cards in Plaintiff's name without his knowledge or consent. Plaintiff alleges he would be responsible for the debts incurred on the Credit Card Accounts and that he was harmed by information about the Credit Card Accounts being included on his credit report. Plaintiff also alleges that unauthorized withdrawals of at least $277.17 from the Chase Account (reflecting the difference between payments made on the parties' car loans) should be excepted from discharge. Plaintiff argues that Defendant is indebted to him in at least the amount of $277.17 for making his car payments from his account and other transfers that were not authorized.

Willful and malicious injury under § 523(a)(6) requires a showing of an intentional or deliberate act.[36] "[A] debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury."[37] Malicious means "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will."[38]

The evidence at trial established that Defendant opened up the Credit Card Accounts in Plaintiff's name. Although Plaintiff argues that Defendant opened these credit cards for the purpose of causing injury or taking actions that were substantially certain to cause injury in the form of Plaintiff's indebtedness, Plaintiff has not offered records of the Credit Card Accounts into evidence, and the Court has not been provided any evidence about charges on those accounts or whether they

---

[36] *In re Walker*, 48 F.3d 1161, 1163 (11th Cir. 1995).
[37] *In re Jennings*, 670 F.3d 1329, 1334 (11th Cir. 2012).
[38] *Id.*

were incurred for Defendant's benefit. The Court finds that Plaintiff has failed to meet his burden under § 523(a)(6) with respect to the Credit Card Accounts.

Likewise, Plaintiff fails to meet his burden of proof on his claim of unauthorized withdrawals from the Chase Account. Defendant testified that he had an agreement with Plaintiff that until he could get his automatic payments to Warren Federal Credit Union stayed, he would make Plaintiff's car payments in exchange. Plaintiff testified that he authorized Defendant to use the Chase Account after Defendant's name was removed from the account in order for him to manage Plaintiff's financial affairs. Plaintiff did not present evidence as to the amounts he claims Defendant wrongfully withdrew from the Chase Account. And Plaintiff testified that most, if not all, of the debit card withdrawals were for his own benefit and use.

The Court recognizes that Plaintiff seeks to supplement the record with the Chase Account Records attached to his Motion for New Trial and additional testimony. But even if the Court were to consider the Chase Checks and find that Defendant signed them with Plaintiff's signature, most of the Chase Checks were written before the parties terminated their relationship in March 2015. While the last check was written in August 2015, Plaintiff testified that he permitted Defendant to continue to manage his financial affairs after their breakup and that Plaintiff did not attempt to access the Chase Account until September 2015. Given Plaintiff's own testimony, the Court finds that even if the newly proffered evidence were admitted, Plaintiff still would not have meet his burden of proof.

### IV.     False Oath Under § 727(a)(4)(A) (Count XVII)

Plaintiff contends that Defendant's discharge should be barred because he failed to list assets of the bankruptcy estate and made several omissions or false statements on his bankruptcy schedules. A false oath is material when "it bears a relationship to the bankrupt's business

transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property."[39] However, because § 727(a)(4)(A) aims to "prevent knowing fraud or perjury," the objection should not apply to "minor errors."[40] As the court stated in *In re Dupree*:

> [t]here is a difference between a debtor who is trying to hide assets with a false oath or material omissions in his Statement of Financial Affairs, and a debtor who, through inadvertence, mistake, or ignorance of the issue of materiality in his disclosures, may omit certain assets in his original Statement of Financial Affairs.[41]

Thus, courts analyze the omissions or nondisclosures to determine whether they were part of a scheme to retain assets for the defendant's own benefit at the expense of creditors.[42]

Defendant testified that he did not list the refrigerator and oven because he believed they were part of the Naples Condominium, and, in any event, they are of minimal value. He testified that the laptop he listed on his bankruptcy schedules actually referred to his iPad. While Defendant acknowledged that he failed to list the television on his schedules, he testified that it was five years old and worth approximately $100.00. Plaintiff did not object to this testimony or offer rebuttal evidence on the value of these items. The Court finds that Defendant's omissions on his original schedules were not material and that Plaintiff failed to prove his claim that Defendant omitted listing assets on his schedules by a preponderance of the evidence.

With respect to the alleged misstatements and omissions on Defendant's Statement of Financial Affairs, Defendant testified that he and Plaintiff agreed that during the time Defendant's car payments to Warren FCU were being made via automatic draft from the Chase Account, Defendant would make Plaintiff's car payment to Kinecta FCU from Defendant's own account. While Defendant should have listed the $100.00 approximate difference in car payments as

---

[39] *In re Mitchell,* 633 F.3d 1319, 1327 (11th Cir. 2011).
[40] *In re Dupree*, 336 B.R. 490, 494 (Bankr. M.D. Fla. 2005) (quoting *In re Wills*, 243 B.R. 58, 63 (B.A.P. 9th Cir. 1999)).
[41] *Id.*
[42] *Id.*

additional income, the Court finds this to be a *di minimis* omission that does not rise to the level of a material omission made with the intent to hide substantial financial assets.

Question No. 11 on the Statement of Financial Affairs titled "Closed Financial Accounts" required Defendant to list all financial accounts held in his name that were "closed" within one year prior to filing. Defendant testified that he did not list the Chase Account because it had not been closed. The Court finds that Defendant did not knowingly make a misstatement when he answered this question in the negative.

Finally, because there was no evidence introduced at trial regarding Defendant's dependents at the time of filing, Plaintiff has not met his burden to demonstrate that Defendant's statement regarding his dependents was a false statement on his Schedule J.

As Plaintiff failed to show that the false oath was knowingly or fraudulently made with respect to a material fact, this count is denied. The Court concludes that Plaintiff has not satisfied his burden of proof on his § 727(a)(4)(A) claim.

## **CONCLUSION**

For the reasons set forth above, the Court will enter an order denying the Motion for New Trial, which the Court has treated as a motion to reopen the evidence, and will enter judgment for Defendant on all claims in Plaintiff's complaint.

The Clerk will serve a copy of this Order via CM/ECF.